IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **CARRIE L. RHONE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) Case No. \_\_3:21cv807_____ |
| v. | ) |
| | ) |
| **ASHLAND LLC,** | ) |
| | ) |
| **Serve: CT Corporation System** | ) |
|        **4701 Cox Road** | ) |
|        **Suite 285** | ) **JURY TRIAL DEMANDED** |
|        **Glen Allen, Virginia 23060** | ) |
| | ) |
|     **Defendant.** | ) |

## COMPLAINT

COMES NOW the Plaintiff, Carrie L. Rhone ("Rhone" or "Plaintiff"), by counsel, and as her Complaint against the Defendant, Ashland LLC ("Ashland" or "Defendant"), sets forth the following allegations:

## INTRODUCTION

1. This complaint presents a civil action alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, and sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

## PARTIES

2. Rhone is a citizen of the Unites States and a resident of Prince George, Virginia. At all times relevant to this complaint, Rhone was employed by Ashland at its Hopewell, Virginia location.

3. Ashland is a Kentucky limited liability company operating and conducting business within the Commonwealth of Virginia. Ashland is an "employer" as defined by 42 U.S.C. § 12111(5) and 42 U.S.C. § 2000e(b).

## JURISDICITION AND VENUE

4. This action seeks $600,000.00 in damages and attorneys' fees for Defendant's violation of federal law.

5. This Court has jurisdiction over the claims in this action arising under the laws of the United States pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

6. The unlawful employment practices alleged herein occurred in Virginia within the division and district of this Court. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

7. Rhone has fully complied with the administrative requirements of the ADA and Title VII, and all conditions precedent to the filing of this suit have been performed or have occurred:

    a. Rhone timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2020, alleging sex and disability discrimination, styled Charge Number 846-2020-21183.

    b. On September 29, 2021, the EEOC issued a Notice of Right to Sue ("Notice") to Rhone, in which the EEOC determined that it would not proceed further with its investigation and made no determination about whether further investigation would establish violations of the statute.

    c.    This Complaint was filed within ninety (90) days of Rhone's receipt of the Notice and determination.

## FACTS

8. Rhone began her employment with Ashland in 2006. Most recently, she served in the position of Dryside Technician.

9. Over the course of Rhone's employment, she received multiple promotions, positive performance reviews, and merit increases. At all relevant times, her performance met her employer's legitimate expectations.

10. Upon her hire, Rhone disclosed her medical condition of generalized depressive disorder to Ashland's Human Resources office and submitted a request for medical accommodation form to address any medical needs she may have.

11. In accordance with her request for an accommodation pursuant to the Americans with Disabilities Act, Ashland provided her with the reasonable accommodation of short-term disability ("STD") when dealing with the symptoms of this disorder, which she used intermittently over the years.

12. As a result of the discriminatory treatment that Rhone received throughout her employment, she was forced to file multiple complaints alleging sex and disability discrimination with management.

13. In addition, Rhone filed a Charge of Discrimination with the EEOC on July 18, 2018 alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

14. Due to Rhone's complaints, she was continually subjected to increased scrutiny and discriminatory treatment.

15. Because of the increased scrutiny, Rhone consistently felt threatened at work and was fearful that she would be retaliated against for any small mistake. The treatment exacerbated the symptoms of her disability and caused her to experience consistent stress.

16. For example, on September 5, 2019, Rhone informed management that her doctor had taken her out of work due to depression caused by discriminatory treatment at work, and that she would be taking STD leave.

17. On September 12, 2019, Lee Beechboard, HR Manager, called Rhone and left her a message stating that when she was cleared to return to work, she would need to check in with Dr. Peter Ault, Ashland's physician, and submit documentation supporting her STD leave. In all of Rhone's years of working at Ashland, she was required to submit this documentation at the time that she returned to work in order to receive STD leave pay, rather than while she was still on leave.

18. On September 26, 2019, Rhone received a Notice and Proof of Claim for Disability Benefits Form, which she returned on October 5, 2019 and which stated that she could return to work on October 16, 2019. However, on October 16, 2019, Rhone informed Ashland that she was not released by her doctor to return to work and had to extend her leave.

19. Surprisingly, on October 28, 2019, Rhone received a letter stating that if she did not submit medical documentation supporting her leave before November 1, 2019, then Ashland would consider it job abandonment and terminate her employment.

20. In all of Rhone's years of employment with Ashland, she never received any similar correspondence threatening her employment while out on STD leave. Rather, as reiterated by Beechboard in her September 12, 2019 voicemail to Rhone, she was always required to submit medical documentation supporting her leave only when she returned to work.

21. It is clear that Ashland's failure to inform Rhone of this new requirement just days before she was scheduled to be terminated was an effort to retaliate against her and cause her termination from the company.

22. On November 12, 2019, after almost four months, Rhone returned to work. When returning to work following a leave of absence, Ashland provides its employees with refresher training.

23. For example, Rhone's male coworker, Chris Harrell, was provided with almost two months of retraining when he returned to job assignments that he had been performing for years.

24. In contrast, Rhone was only provided with five days of refresher training when returning to a job assignment to which she had recently been assigned. It is clear that Ashland denied Rhone the same amount of retraining in another effort to set up her up to fail and to cause her termination.

25. On January 20, 2020, Rhone was diagnosed with strep throat and required to take off work. When Rhone tried to return on January 28, 2020, Dr. Ault refused to clear her to return because her blood pressure was high.

26. On February 3, 2020, Rhone spoke with Beechboard to find out what she needed to do to receive STD pay. Beechboard informed Rhone to contact Lincoln Financial, which she did. However, Beechboard failed to inform Rhone that she also needed to submit a disability form. In all of Rhone's past experience, she was not required to submit a disability form until she returned to work.

27. Due to the failure to inform Rhone of this new requirement, she was not paid on February 6, 2020.

28.     On February 13, 2020, when Rhone informed Beechboard that she had not been paid, Beechboard replied that she was not paid because she did not turn in a disability form. Rhone correctly pointed out that Beechboard had instructed her to contact Lincoln Financial, which she did, but failed to tell her to submit a disability form at that time, which contradicted the past practice within the company.

29.     Rhone immediately had Dr. Ault fill out a disability form and returned it to Beechboard's office.

30.     Thereafter, Rhone called the 1-800-ASHLAND hotline to report that Beechboard had intentionally misled her and caused her not to receive her pay on time.

31.     Brian Johnson, Plant Manager, called Rhone to discuss her concerns regarding discriminatory treatment and her missing pay, and Rhone requested that he investigate this issue.

32.     On March 17, 2020, Shannon Perry provided Rhone with findings to her complaint, and stated that Beechboard would meet with her that week to go over the policy to avoid future misunderstandings. However, Beechboard did not meet with Rhone as promised, and Rhone contacted Perry again on April 8, 2020 to inform her that Beechboard had failed to meet with her. Beechboard finally agreed to meet with Rhone on April 9, 2020 to discuss the process of submitting documentation supporting STD pay.

33.     Shortly after raising her concerns regarding discrimination, on April 18, 2020, Rhone was reprimanded for using the wrong bags for a particular function.

34.     Rhone correctly pointed out that someone had mislabeled the box, and she had no way of knowing that they were the incorrect bags. Nevertheless, Ashland issued Rhone a formal written reprimand anyway and refused her request to investigate who mislabeled the box.

35. It is clear that this discipline was unwarranted and was in retaliation for filing a complaint regarding discrimination in the workplace.

36. Beginning on April 26, 2020, Rhone had to be off work due to potential contact with COVID-19.

37. On April 28, 2020, Rhone went to her primary care physician because she experiencing respiratory issues, and was told she could return to work on May 5, 2020. She went back to her physician on May 5, 2020 due to respiratory issues, and had to take a COVID-19 test and wait for the results before returning to work.

38. After receiving a disability form on May 2, 2020, Rhone timely completed and submitted it on May 6, 2020. However, she was not informed that she would not be paid on May 7, 2020, and she did not receive pay again on that day.

39. Rhone is aware of two male coworkers, Kelby Williams and William Benson, who were not required to submit disability forms while out on leave in order to receive STD pay and did not receive any interruption to their pay, unlike Rhone.

40. On May 8, 2020, Rhone returned to work after being released by Dr. Ault.

41. On May 9, 2020, Levi Stillwell informed Rhone that she needed to provide daily wellness reports and her temperature, wear a face mask at all times while at the plant, and clean her areas before leaving each day.

42. Further, Stillwell said that he would send an email with instructions on how to comply with these requirements, but he failed to do so. As a result, on May 10, 2020, Rhone called Stillwell to get this information, but he did not answer or return her call.

43. Surprisingly, despite the fact that Rhone reached out to Stillwell on multiple occasions regarding instructions as to how to comply with this requirement, on May 11, 2020, Stillwell accused Rhone of being non-compliant with the requirements he imposed.

44. It was clear that Stillwell was fabricating a reason to terminate or otherwise discipline Rhone. She requested a meeting with Brian Johnson or Beechboard to discuss this concern, but they declined her requests.

45. As a result of the ongoing discriminatory treatment and failure to take any remedial action, on May 12, 2020, Rhone went to see Dr. Ault to discuss increased stress and depression. Dr. Ault diagnosed her with a stress reaction, and took her out of work from May 12, 2020 to May 18, 2020.

46. After she had recovered from the stress reaction, on May 15, 2020, Rhone went to Dr. Ault to be cleared to return to work. Dr. Ault denied her to return to work, but the next day, May 16, 2020, he called her and told her to return to work. Dr. Ault did not provide any reason why he had suddenly reversed his decision.

47. On May 16, 2020, Rhone returned to work and, as instructed, reported her health condition to Stillwell and Beechboard. Specifically, she reported that she had pink eye.

48. Beechboard informed her that she no longer needed to report her health condition, but did not address the issue of her pink eye. In contrast, when another male coworker, Jason Hall, had pink eye, he was sent home from work and his work area was sanitized. However, when Rhone reported that she had pink eye, she was forced to continue working and Ashland did not take any remedial action.

49. On May 18, 2020, Rhone filed a Priority 1 KMI, which is used to report incidents, regarding the ongoing disparate treatment to which she had been subjected. This type of complaint

is distributed to all levels of management, including the CEO. Despite the fact that this complaint was distributed throughout the company, Ashland failed to adequately investigate or address Rhone's concerns.

50. On May 20, 2020, Rhone met with Dave Drunkenboard, VP EHS and Sustainability, Anna Miller, HR Business Partner, and John Johnson, Union President. At the conclusion of the meeting, Miller promised that an investigation would be conducted into her complaints.

51. However, on June 5, 2020, Rhone met again with Drunkenboard, Miller, and John Johnson, and Miller stated that all issues had been resolved and her complaint was not substantiated. Moreover, management failed to interview any of her coworkers or otherwise adequately investigate or take any remedial action to address her concerns.

52. On June 6, 2020, Rhone suffered a head laceration on the job due to an unprotected piece of metal that was protruding from a machine. Rhone was forced to visit the emergency room, where she was treated for the one-inch head laceration. The treating physician there removed her from work until June 9, 2020 due to the injury.

53. Rhone subsequently began to experience a constant headache.

54. On June 10, 2020, Rhone saw Dr. Ault due to headaches, loss of balance, sensitivity to light, and memory loss. He indicated a return to work date of June 11, 2020.

55. On June 11, 2020, Rhone woke up with a severe headache and told Dr. Ault that she wanted a second opinion. Rhone went to Patient First, and the treating physician recommended that she see a neurologist if symptoms continued.

56. Rhone presented her doctor's note to Beechboard, indicating light duty restrictions until June 21, 2020. Beechboard informed Rhone that the company could not accommodate her restrictions and that she would instead need to fill out a disability form.

57. During this meeting, Beechboard also informed Rhone that her visit to Patient First was not authorized and that she would have to pay out of pocket for it.

58. On June 15, 2020, Rhone was treated at the John Randolph Medical Center emergency room for post concussive syndrome. She was prescribed medication for continued nausea.

59. On June 17, 2020, Rhone visited Dr. Ault as instructed by Beechboard to be cleared to return to work.

60. Rhone informed Dr. Ault that she continued to experience headaches and that the neurologist had refused to see her because it was a work related injury. Dr. Ault replied, "I don't think you are having headaches because you hit your little head." Rhone was told that she could not see a neurologist without going through workers' compensation.

61. On June 19, 2020, Beechboard informed Rhone that she would have to be cleared by Dr. Ault in order to return to work, so Rhone saw Dr. Ault again on June 21. Dr. Ault told Rhone that she needed to be released from Patient First, so she went back that day and they released her to return to full duty.

62. However, Dr. Ault refused to release Rhone back to work and said, "I don't feel comfortable sending her back to work." Rhone was informed by Beechboard that she would need to go on STD leave, which she did.

63. Subsequently, after Rhone was belatedly authorized to visit a neurologist, she was diagnosed with post concussive syndrome and still experiences symptoms of this condition.

64. Ashland's denial of her request to visit a neurologist despite her numerous legitimate requests is further evidence of discriminatory and retaliatory conduct.

65. After continuing to be on STD leave, on May 5, 2021, Rhone was forced to resign from her position due to the symptoms of post concussive syndrome resulting from her on the job injury.

66. As a result of the discriminatory treatment she received, Rhone's condition has worsened and she now suffers from major depressive disorder and PTSD.

## COUNT I:
## DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

67. Rhone hereby incorporates each of the above paragraphs as though fully set forth herein.

68. At all times relevant to this Complaint, Rhone was an employee of Ashland.

69. Rhone is a qualified individual with a disability as defined by the ADA, as she suffers from generalized depressive disorder, PTSD, and post concussive syndrome.

70. Defendant, through its members, supervisors, employees, and agents, discriminated against Rhone on the basis of her disabilities and subjected her to a hostile work environment when it harassed her and interfered with her use of her accommodation; provided conflicting and incorrect instructions regarding medical forms necessary for her STD, which led to her not being paid on at least two occasions; threatened to terminate her on multiple occasions for failure to provide medical forms while she was out on medical leave; subjected her to increased scrutiny and unwarranted disciplinary action in comparison with her non-disabled colleagues; treated her differently than non-disabled employees by imposing requirements on her upon her return to work that were not imposed upon her colleagues; refused to provide her with medical care necessary to

treat her workplace injury; and failed to adequately investigate her complaints or take remedial action.

71. The discriminatory conduct was unwelcome, severe, and pervasive, detrimentally affected Rhone, was viewed as subjectively hostile and abusive by Rhone, and would be viewed as objectively hostile and abusive to a reasonable person.

72. Rhone complained numerous times to Ashland management about the discrimination and harassment, and Ashland had actual or constructive knowledge of the ongoing discrimination and harassment.

73. Ashland failed to take prompt and appropriate remedial action to correct or prevent further discrimination and harassment of Rhone.

74. As a direct and proximate consequence of Defendant's unlawful actions, Rhone has suffered, and continues to suffer injuries, including but not limited to the loss of wages, loss of benefits, emotional pain and suffering, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

## COUNT II:
## SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

75. Rhone hereby incorporates each of the above paragraphs as though fully set forth herein.

76. At all times relevant to this Complaint, Rhone was an employee of Ashland.

77. Rhone, as a female, is a member of a protected class as defined by Title VII.

78. Defendant, through its members, supervisors, employees, and agents, discriminated against Rhone and subjected her to a hostile work environment because of her sex when it subjected her to increased scrutiny and unwarranted disciplinary action in comparison with her

male colleagues, failed to take the same action in response to her complaints that it took in response to her male colleagues' complaints, treated her differently than her male employees by imposing requirements on her upon her return to work that were not imposed upon her male colleagues, and failed to adequately investigate her complaints or take remedial action.

79. As a direct and proximate consequence of Defendant's unlawful actions, Rhone has suffered, and continues to suffer injuries, including but not limited to the loss of wages, loss of benefits, emotional pain and suffering, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

## COUNT III:
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

80. Rhone hereby incorporates each of the above paragraphs as though fully set forth herein.

81. Rhone engaged in protected activity when she complained about discrimination and harassment based on her disability to Ashland management.

82. Shortly after Rhone complained about discrimination and harassment on the basis of her disability in March 2020, she was retaliated against when Ashland disciplined her in April 2020 by issuing her an unwarranted written reprimand.

83. There was a causal connection between Rhone's complaints and the materially adverse actions taken against Rhone by Ashland.

84. The retaliation endured by Rhone would dissuade a reasonable employee from making complaints of discrimination and harassment.

85. As a direct and proximate consequence of Defendant's unlawful actions, Rhone has suffered, and continues to suffer injuries, including but not limited to the loss of wages, loss of

benefits, emotional pain and suffering, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

## COUNT IV:
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

86. Rhone hereby incorporates each of the above paragraphs as though fully set forth herein.

87. Rhone engaged in protected activity when she complained about discrimination and harassment based on her sex, including by filing a Charge of Discrimination with the EEOC alleging sex discrimination.

88. Shortly after Rhone complained about discrimination and harassment on the basis of her sex in March 2020, she was retaliated against when Ashland disciplined her in April 2020 by issuing her an unwarranted written reprimand.

89. There was a causal connection between Rhone's complaints and the materially adverse actions taken against Rhone by Ashland.

90. The retaliation endured by Rhone would dissuade a reasonable employee from making complaints of discrimination and harassment.

91. As a direct and proximate consequence of Defendant's unlawful actions, Rhone has suffered, and continues to suffer injuries, including but not limited to the loss of wages, loss of benefits, emotional pain and suffering, humiliation, damage to reputation, medical expenses, attorneys' fees, and other legal costs and expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant on the above stated Counts, and in addition that this Court:

    a.    Award Plaintiff compensatory damages in the amount of $300,000.00 for each of Counts I, II, III, and IV;

    b.    Award Plaintiff her medical expenses, lost wages, lost benefits of employment, lost vacation, and backpay;

    c.    Award Plaintiff reasonable attorney's fees and costs of this action and;

    d.    Award such other and further relief to Plaintiff as may be appropriate in the circumstances.

**Jury Demand**
**A TRIAL BY JURY IS DEMANDED**

    Respectfully Submitted,
    Carrie L. Rhone
    By Counsel

    _____/s/_____

Barbara Queen (VSB No. 47314)
Samuel T. Long (VSB No. 95363)
LawrenceQueen
701 East Franklin Street, Suite 700
Richmond, Virginia 23219
Telephone: (804) 643-9343
Facsimile: (804) 643-9368
*bqueen@lawrencequeen.com*
*slong@lawrencequeen.com*